UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**

**V.**

**CRIMINAL NO. 16-58-JWD-RLB**

**CHRISTOPHER G. WAGUESPACK**

\*\*UNDER SEAL\*\*

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

NOW INTO COURT, through undersigned counsel, comes Christopher Waguespack, defendant in this matter, who respectfully requests this Court to suppress all evidence obtained pursuant to the search executed on September 24, 2015. As Mr. Waguespack is challenging the veracity of statements included in the affidavit for probable cause submitted in connection with a search warrant, Mr. Waguespack respectfully requests this Court to order an evidentiary hearing–or *Franks* hearing–in order for testimony to be offered in support of his assertion that the search warrant is constitutionally infirm.

### I. STATEMENT OF FACTS

On June 15, 2016, a grand jury charged Christopher Waguespack with two counts of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2). The Government has alleged that Count One occurred on or about May 5, 2015, and that Count Two occurred on or about June 13, 2015. The Indictment further charged Christopher Waguespack with one count of possession of child pornography on September 24, 2015, in violation of 18 U.S.C. §2252A(a)(5)(B). The indictment also contains a forfeiture allegation.

Investigator Louis Ratcliff, the lead investigator in this case, is assigned to the Louisiana Attorney General's Office Cyber Crime Unit. According to the investigative reports, on May 5, 2015,

1

Investigator Louis Ratcliff was conducting undercover investigations into child pornography using "Bit Torrent," which is a peer to peer file sharing software. Using this peer to peer software, Investigator Ratcliff downloaded several hundred pictures and multiple videos that he believed to be child pornography from a user using IP Address "174.██.███.██."

On May 6, 2016, Investigator Ratcliff prepared an administrative subpoena ordering Cox Comminations to disclose the user information regarding IP Address "174.██.███.██" for the dates of March 29 and 30, 2015. Attached as *Exhibit A*. On May 28, 2015, in response to the subpoena, Cox Communications reported that the user information for March 29 and 30, 2015 for IP Address "174.██.███.██" was Larry Waguespack at ██████████████ in Baton Rouge Louisiana. Attached as *Exhibit B*. There is nothing to indicate that Investigator Ratcliff took further action after receiving this information.

On June 13, 2015, in what is portrayed as a separate investigation, Investigator Ratcliff was again conducting undercover investigations using the "Bit Torrent" software. Investigator Ratcliff again viewed several videos he believed to be child pornography through a direct connection with a computer located at the IP Address "70.███.███.██."

On August 6, 2015, Investigator Ratcliff prepared an administrative subpoena for the user information regarding IP Address "70.███.███.██." Attached as *Exhibit C*. On August 24, 2015, in response to the subpoena, Cox Communications reported that the user information regarding IP Address "70.███.███.██" for June 13, 2015 was Larry Waguespack at ██████████████ in Baton Rouge, Louisiana. Attached as *Exhibit D*. Upon realizing that the information from Cox Communications indicated that the investigation was of the same user, Investigator Ratcliff combined the two investigations.

2

On September 23, 2015, Investigator Ratcliff authored an application for search warrant for the residence located at ▓▓▓▓▓▓▓▓▓▓ in Baton Rouge, Louisiana. Attached as *Exhibit E*. The application, which was in the form of a sworn affidavit, was presented to and signed by a State Court Judge. The affidavit reads in relevant part:

> Further investigation shows that the aforementioned IP address was registered to Cox Communications in Louisiana at the exact times and dates of the commission of the crime. Additional investigation...of subpoenas to Cox Communications in Louisiana, and that company's response to the subpoena states that in the exact dates and times of the commission the IP Addresses "174.▓▓▓▓▓▓" and "70.▓▓▓▓▓▓" was being used by persons at ▓▓▓▓▓▓▓▓▓▓ Baton Rouge LA 70810.[1]

*Exhibit E*. Based upon the representations in the affidavit, the State Court Judge issued a search warrant, attached as *Exhibit E*. The search warrant was executed on September 24, 2015. Numerous electronic devices were searched and seized as a result of this search. Officers were unable to locate any files on the computer during the forensics preview search, however, officers reported they did locate Bit Torrent software actively searching and downloading known Child Pornography files.[2]

Mr. Waguespack was arrested by agents for the State of Louisiana following the search of the residence and on June 15, 2016, a federal grand jury indicted Mr. Waguespack on the instant charges.

---

[1] The copy of the affidavit submitted in support of the search warrant provided to defense counsel has the text "72022" stamped across the document which obscures some of the wording on the affidavit. The obscured wording has been replaced by an ellipses (...) in this motion.

[2] This observation reported by Investigators who conducted the search is wholly inconsistent with the forensic report later produced by the Government which found that, "No specific torrent software clients were located."

3

## II. LEGAL AUTHORITIES

"The bulwark of Fourth Amendment protection" is its requirement that "police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). The Amendment further provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. encompassed within the Fourth Amendment's demand of a factual showing sufficient to comprise probable cause is "the obvious assumption...that there will be a *truthful* showing." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). When a search warrant appears facially valid, but it is determined that the probable cause determination was based upon a demonstrated falsehood, the analysis employed by the Supreme Court in *Franks v. Delaware* is implicated. 438 U.S. 154 (1978).

In *Franks v. Delaware*, the Supreme Court was presented with the question of whether a criminal defendant had the right to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. 438 U.S. 154 (1978). The State of Delaware, as well as many other courts, had an absolute rule prohibiting a defendant from challenging the veracity of a sworn statement used by police to procure a search warrant. However, defendant Franks sought to challenge the truth of two statements included in the affidavit supporting the search warrant for his residence. *Id* at 156. In the affidavit, officers had described an attempt made by police to confirm that defendant Franks's typical outfit matched the outfit of the assailant in the case. The affidavit stated the officers had a personal conversation with two people, and that these two people confirmed defendant Franks's normal dress was consistent with that of the assailant. *Id.* Defense counsel sought to challenge the truth of these statements at a hearing where the two people would testify they had never been personally interviewed by the warrant affiants, and that although they may have talked

4

to another police officer, any information given to that officer was "somewhat different" from what was recited in the affidavit. *Id.* The trial court denied Defense counsel's motions, the evidence of the search was admitted at trial and defendant Franks was convicted. *Id.*

The Supreme Court reversed the Delaware Supreme Court's decision imposing an absolute ban on the right of a criminal defendant to challenge the veracity of statements in the affidavit. *Id.* In setting forth the standard for when a criminal defendant is entitled to a hearing to challenge the truth of statements within an affidavit, the Supreme Court explained:

> [W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks* at 155-56. Further expounding on this new rule, the Court stated:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth

5

> Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Franks* at 171-72. On remand from the Supreme Court of the United States, the Supreme Court of Delaware found that, after excising the false paragraphs, there were still sufficient uncontested allegations to establish probable cause. *Franks v. State*, 398 A.2d 783 (Del. 1979).

Thus, *Franks v. Delaware* sets forth a three-level inquiry to determine whether a *Franks* hearing should be held for a defendant to challenge the veracity of statements within the affidavit. First, it must be determined whether or not the affidavit contains a material false statement. Next, the state of mind of the affiant must be examined to determine whether he acted knowingly and intentionally, or with reckless disregard for the truth. As the Supreme Court recognized allegations of negligence are insufficient if the defendant hopes to carry his burden and obtain an evidentiary hearing. *Franks* at 171-2. Finally, the court must remove the false statements from the affidavit and a determination must be made of whether the affidavit's remaining content is sufficient to establish probable cause. The offending language must be excised out of the affidavit. There is no support for the proposition that the affidavit can be cured simply by redrafting or rewording the affidavit.

The Fifth Circuit has provided little guidance on determining whether a misrepresentation has been made intentionally or with reckless disregard for the truth, or simply negligently. The Fifth Circuit has offered more instruction in the context of omissions as opposed to misrepresentations. In *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980), the Court was faced with an omission from, as opposed to a misrepresentation in, an affidavit. The Fifth Circuit recognized that omissions should be treated essentially the same as misstatements. *Id*. The *Martin* court noted that, "[i]t is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable

cause the fact of recklessness may be inferred from proof of the omission itself." *Id. See also United States v. McKey*, No.4:07-CR-000062, 2007 WL 2601206, at *2 (E.D. Ark. Sept. 10, 2007)("We have acknowledged that recklessness may be "inferred from the fact of omission of information from an affidavit ... when the material omitted would have been 'clearly critical' to the finding of probable cause."); *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993) (stating that officers act with reckless disregard if they knowingly withhold facts that "[a]ny reasonable person would have known... was the kind of thing the judge would wish to know.").

In *United States v Namer*, the Fifth Circuit adopted this reasoning and applied it to misrepresentations in the affidavit. 680 F.2d 1088, 1094 (1982). In *Namer*, the court was faced with the question of whether a misrepresentation of the status of an economic offering in a loan brokerage scheme was material and reckless under the standards in *Franks*. *Id.* Relying on the *Martin* court's reasoning on the likeness of omissions and misstatements in affidavits, the *Namer* court stressed the "recognition that the analytical concepts of materiality and recklessness are often bound together." *Id.* at 1094. The *Namer* court went on to find that the misrepresentation in the affidavit was a "crucially material one." *Id.* The court then inferred from the finding of vital materiality and the other circumstances surrounding the investigation that the misrepresentation was made with at least reckless disregard for the truth. *Id.* Therefore, under Fifth Circuit law, it is permissible to infer recklessness from the materiality of the misrepresentation.

The final step of the inquiry reverts the analysis to one of the fundamentals of criminal law: whether or not the magistrate would have had probable cause when reviewing the purged affidavit. *Namer* at 1095. On the issue of probable cause to believe a crime has been committed, the Fifth Circuit has stated:

7

> Of course, "probable cause" means something more than "mere suspicion." Probable cause requires the existence of facts " 'sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed" and the person to be arrested (or searched) committed it.

*United States v. Gordon*, 580 F.2d 827, 832–33 (5th Cir.1978) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). In determining whether probable cause exists without the false statements a court must "make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit [minus the alleged misstatements], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir.1994).

### III.   ARGUMENT

The search warrant application submitted to the court in this case contained a material misstatement: "Further investigation shows that the aforementioned IP address was registered to Cox Communications in Louisiana **at the exact times and dates** of the commission of the crime" is a misstatement and material." *Exhibit E (Emphasis added)*. Without this misstatement, there is not sufficient probable cause to support the search warrant, and thus all evidence seized during the execution of the search warrant should be suppressed from use at trial.

Investigator Ratcliff made the first direct contact with IP Address "174.▪▪▪.▪▪▪.▪▪" on May 5, 2016. However, the subpoena sent to Cox requesting user information, to which Cox responded on May 28, 2016, provided the user information for the dates of March 29 and 30, 2015, not May 5, 2015. *Exhibit A.* The Government's own investigation shows that there is no information regarding the registered user for IP Address "174.▪▪▪.▪▪▪.▪▪" on May 5, 2015. Therefore, Investigator Ratcliff falsely represented to the state court in the affidavit that the IP Address "174.▪▪▪.▪▪▪.▪▪" was

8

registered to a user at ▮▮▮▮ on the exact time and date of the commission of the crime.

This statement gave the impression that Investigator Ratcliff had consulted with Cox Communications and that Cox had verified that the "174.▮▮▮.▮▮▮.▮▮" was registered to a user at ▮▮▮▮ on May 5, 2015. However, Investigator Ratcliff did not confirm that the IP Address associated with the direct connection on May 5, 2015 was associated with ▮▮▮▮ or Christopher Waguespack. The potential implication of the falsehood is profound because Investigator Ratcliff's own investigation shows that ▮▮▮▮ was using an IP Address from Cox Communications, and that the IP Address number changed over time. On March 29 and 30, 2015, IP Address "174.▮▮▮.▮▮▮.▮▮" was registered to a user ▮▮▮▮, and by the time of the direct connection on June 13, 2015, the IP Address associated with ▮▮▮▮ had changed to "70.▮▮.▮▮▮.▮▮." *Compare Exhibits B & D*. There is no information on when the IP Address associated with ▮▮▮▮ changed. Therefore, it is possible that on April 1, 2015, IP Address "174.▮▮▮.▮▮▮.▮▮" ceased to be registered to a user at ▮▮▮▮. This would mean that the direct connection Investigator Ratcliff participated in on May 5, 2015 was not with someone located at ▮▮▮▮. Investigator Ratcliff misrepresented how the files obtained through the direct connection were related to the IP Address, and therefore, misrepresented how the files were related to the eventual address that was searched.

In determining whether the affiant's actions were in reckless disregard for the truth, this Court need look no further than the Government's own reports disclosed through the discovery process in comparison to the information provided to the judge in the affidavit for probable cause. Several internal investigation reports document that the first and second direct connection took place

on May 5, 2015. *See Exhibit G* (Summary Memorandum); *Exhibit H* (May 5, 2015 Memorandum); *Exhibit I* (May 6, 2015 Memorandum). Each of these reports were authored by Investigator Louis Ratcliff. Investigator Ratcliff was also the officer who prepared the subpoena to Cox Communications requesting IP Address dates for March 29 and 30, 2015. Attached as *Exhibit A*. Critically, Investigator Ratcliff is the affiant who authored the statement of probable cause included in the warrant to search ▉▉▉▉▉▉▉▉▉. *Exhibit E*. Investigator Ratcliff was the lead officer conducting investigations, producing reports, and accumulating evidence which culminated with the presentation of a search warrant for signature by the judge which contained false information.

The officer's actions in misrepresenting to the judge that there was evidence connecting the address of ▉▉▉▉▉▉▉▉▉ to the IP Address "174.▉▉.▉▉▉.▉▉" on the date of May 5, 2016 is more than a simple mistake or negligent. The Investigator had literally at his fingertips the reports that demonstrated the statement that the IP Address was registered to ▉▉▉▉▉▉▉▉▉ "at the exact date and time" was false. *See Exhibits G, H, & I*. Yet, he proceeded to misrepresent to the judge how the investigation and the evidence was related to the residence of ▉▉▉▉▉▉▉▉▉. Investigator Ratcliff had to have entertained more than serious doubts as to the truth of his allegations contained in the statement for probable cause because he was the steward of all of the information related to the investigation. The Investigator's actions are at a minimum in reckless disregard of the truth.

Further, the facts presented in this case implicates the reasoning employed by the *Namer* court when it acknowledged the "recognition that the analytical concepts of materiality and recklessness are often bound together." *Id.* at 1094. The false statement is the only fact included in the affidavit which would have supported a finding of probable cause. It is vitally critical to the

10

finding of probable cause because the judicial officer must be furnished with evidence linking the address to be searched and the IP Address on May 5, 2015. Like the *Namer* court, the recklessness of Investigator Ratcliff should be inferred from the materiality of the misstatement included in the affidavit.

The false statement included in the affidavit of probable cause accompanying the search warrant is so material to the finding of probable cause that, after purging the warrant of the inaccuracies, no judge could still find that probable cause existed. The application for search warrant has been attached in its entirety to this motion in *Exhibit E*, but is reproduced in relevant portion below

> Further investigation shows that the aforementioned IP address was registered to Cox Communications in Louisiana at the exact times and dates of the commission of the crime. Additional investigation...of subpoenas to Cox Communications in Louisiana, and that company's response to the subpoena states that in the exact dates and times of the commission of the crime the IP Addresses "174.██████" and "70.██████" was being used by persons at ██████ Baton Rouge LA 70810.

*Exhibit E*. As previously noted, Investigator Ratcliff had no information whatsoever regarding who the IP Address "174.██████" was registered to on May 5, 2015, let alone the "exact date and time" of the commission of the crime. The information in the affidavit is false. Moreover, because of the officer's role in the investigation and his ease of access to the information, he acted with recklessness when including this information in the affidavit accompanying the search warrant. A critical analysis of the warrant reveals that the portion below must be excised according to *Franks*.

> ~~Further investigation shows that the aforementioned IP address was registered to Cox Communications in Louisiana at the exact times and dates of the commission of the crime. Additional investigation...of subpoenas to Cox Communications in Louisiana, and that company's response to the subpoena states that in the exact dates and times~~

11

~~of the commission the IP Addresses "174.▓▓.▓▓▓.▓▓" and "70.▓▓▓.▓▓▓.▓▓" was being used by persons at ▓▓▓▓▓▓▓▓▓▓▓▓ Baton Rouge LA 70810.~~

Excising the tainted portion of the affidavit requires that the paragraph be purged in its entirety. Investigator Ratcliff combined the two investigations thereby transforming this into a solitary investigation. Rather than keep separate and perhaps include two separate paragraphs detailing the facts to support the probable cause, he chose to entangle them into one. The presentation to the State Judge would have consisted of the presentation of one investigation. Therefore, to purge the affidavit of its falsehood, the entirety of the paragraph must be excised. Once the misleading and inaccurate portions of the warrant are excluded, there is nothing remaining which links Christopher Waguespack to the instant charges. Therefore, no judge could find probable cause simply relying on the remaining portions of the affidavit for probable cause.

## IV. CONCLUSION

Considering the foregoing, CHRISTOPHER WAGUESPACK, respectfully requests that the Court grant his motion to suppress all evidence obtained as a result of this illegal search.

RESPECTFULLY SUBMITTED,

REBECCA L. HUDSMITH
FEDERAL PUBLIC DEFENDER FOR THE
MIDDLE & WESTERN DISTRICTS OF LOUISIANA

BY: ***S/ Dustin C. Talbot***
      Dustin C. Talbot, La. Bar #33404
      Assistant Federal Public Defender
      102 Versailles Blvd., Suite 816
      Lafayette, Louisiana 70501
      (337)262-6336 (Phone)
      (337)262-6605 (Fax)

***Attorney for Christopher Waguespack***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 19, 2016, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by email to:

Jamie A. Flowers, Jr.
***U.S. Attorney's Office***

*S/ Dustin C. Talbot*

13