## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

**CRIMINAL ACTION**

**v.**

**NO. 16-58-JWD-RLB**

CHRISTOPHER G. WAGUESPACK

## RULING AND ORDER

This matter comes before the Court on the *Motion to Suppress* (Doc. 39) and *Defendant's Motion for a Pre-Trial Copy of the Transcript of the Grand Jury Proceeding* (Doc. 40) filed by Defendant Christopher G. Waguespack.[1]  The Government opposes both motions. (Docs. 43–44.)  An evidentiary hearing and oral argument took place on December 13, 2016. (Doc. 38.)  Post-hearing briefs were filed by each party. (Docs. 54–55, 58–59.)  Having carefully considered the law, the facts in the record, and the arguments and submissions of the parties, both motions are denied.

I.     **Relevant Factual Background**

A.  **Indictment and Superseding Indictment**

On June 15, 2016, the Defendant was indicted on three counts.  (Doc. 1.) The first count charged that, on May 5, 2015, the Defendant knowingly distributed child pornography. (*Id*. at 1.) The second count charged that, on June 13, 2015, he knowingly distributed child pornography.

---

[1] Both of these motions were previously filed into the record under seal. (Docs. 27 & 29.)  The Government's oppositions were also submitted under seal. (Docs. 30–31.)  But, at the evidentiary hearing of these motions, the Court suggested that these documents did not need to be filed under seal as long as the identifiers were redacted. (Mot. Hr'g Tr., 3–4, Dec. 13, 2016, Doc. 49.)  Both parties agreed. (*Id*.)  The Court then ordered the parties to refile their submissions with the identifiers redacted. (*Id*.)  The parties did so. (Docs. 39–40, 43–44.)  As a result, in this ruling, the Court will generally refer to the unsealed versions of the documents, though the ruling applies with equal force to both the sealed and unsealed versions.

(*Id.* at 1.)  And the third count charged that, on September 24, 2015, the Defendant knowingly possessed child pornography. (*Id.* at 2.)

On November 16, 2016 (after the instant motions were submitted), a Superseding Indictment was filed. (Doc. 32.) The second and third counts are the same. (*Id.* at 1–2.)  The first count still charges the Defendant with knowingly distributing child pornography, but it alleges that he did so "[b]etween on or about March 29, 2015, and on or about March 30, 2015." (*Id.* at 1.)

### B.  Investigation

The instant motions center on the conduct of Investigator Louis Ratcliff, who was the lead investigator with the Louisiana Attorney General's Office in the investigation that led to this case.  In sum, the motions involve discrepancies between Ratcliff's documentation and his testimony concerning the date on which Ratcliff used BitTorrent to download child pornography from someone using an IP address XXX.XX.XXX.97.[2]

Specifically, in reports such as his May 5, 2015, Investigative Memorandum (Def. Ex. 1) and others (both typed and handwritten), Ratcliff stated that this download occurred on May 5, 2015. (Mot. Hr'g Tr., 20–22, Dec. 13, 2016, Doc. 49.)  But, at the December 13, 2016, hearing, Ratcliff testified that this download happened in March 2015. (*Id.* at 20, 36.)  Similarly, on May 6, 2015, Ratcliff prepared and issued a subpoena to Cox Communications for the above IP Address, and he did so for the time period of 3/29/2016 at 8:18:48 PM UTC and 3/30/2012 at 12:31:17 AM UTC. (*Id.* at 23–24; Def. Exs. 2–3.)

Ratcliff's explanation for the conflicting dates (repeated several times at the hearing) was that May 5, 2015, was the day he opened the case and had the file number assigned to it. (Mot.

---

[2] IP addresses have been redacted throughout this opinion for the Defendant's privacy.

Hr'g Tr., 21, 23, 47, 58, 59, Dec. 13, 2016, Doc. 49.)  Ratcliff described the use of the wrong

date as "an error." (*Id.* at 56.)  He also explained that his operation of searching for child

pornography using BitTorrent had been continuous since December 2014. (*Id.* at 36, 50–51.)

    In any event, on May 28, 2015, Cox Communications responded to the subpoena by

saying that the name associated with the above IP address on those dates was Larry Waguespack

and that he was located at a particular physical address in Baton Rouge. (Def. Ex. 5.)[3]

    Later, on June 13, 2015, Ratcliff was investigating on BitTorrent and again downloaded

child pornography, this time from a user with the IP address XX.XXX.XXX.19. (Def. Ex. 6.)

On August 6, 2016, Ratcliff issued a subpoena to Cox Communications (Def. Ex. 7), and, about

two weeks later, Cox replied that the IP address for that date and time was associated with

Waguespack at the same physical address as the one in the response to the first subpoena. (Mot.

Hr'g Tr., 28–29, Dec. 13, 2016, Doc. 49; Def. Ex. 8.)

### C.  The Affidavit of Probable Cause

    When Ratcliff concluded that the two IP addresses had the same physical address

associated with them, he presented the information in an affidavit and search warrant to Judge

Bonnie Jackson of the 19th Judicial District Court. (Mot. Hr'g Tr., 31–32, Dec. 13, 2016, Doc.

49.)  Ratcliff prepared the affidavit/search warrant application in its entirety. (*Id.* at 32.)

    The affidavit states:

> On May 5, 2015, Investigator Louis Ratcliff, with the Louisiana Attorney
> General's Office Cyber Crime Unit was conducting undercover operations
> involving Pornography Involving Juveniles, as defined in La. R.S. 14:81.1.
> During this undercover operation, using "Bit Torrent" as the client for peer to peer
> file sharing, Investigator Louis Ratcliff was able to obtain multiple single sourced
> downloads from the user using IP Address "[XXX.XX.XXX].97."

---

[3] Throughout this ruling, the Court will use the phrase "the Defendant's physical address."  This has been done to
redact the information from the public record and protect the Defendant's privacy.

(Def. Ex. 11 (underline added).)

Ratcliff testified that he did not connect to Defendant's computer on May 5, 2015; again, May 5 is the day he opened up the file on the investigation. (Mot. Hr'g Tr., 35–36, Dec. 13, 2016, Doc. 49.)  In reality, Ratcliff made the connection in March 2015, even though the affidavit does not say that. (*Id.*)

Continuing with the affidavit, the document then describes the child pornography downloaded. (Def. Ex. 11.)  Thereafter, the affidavit continues:

> On June 13, 2015, Investigator Louis Ratcliff, with the Louisiana Attorney General's Office Cyber Crime Unit was conducting undercover operations involving Pornography Involving Juveniles, as defined in La. R.S. 14:81.1. During this undercover operation, using "Bit Torrent" as the client for peer to peer file sharing, Investigator Louis Ratcliff was able to obtain a single sourced download from the user using IP Address "[XX.XXX.XXX].19" port [XXX]45

(*Id.*) During the direct connection with the computer at this second IP address, Ratcliff viewed thirty-four videos of young females of about ten to thirteen years of age. (*Id.*)  The affidavit states that "one video Investigator Ratcliff downloaded was of a white juvenile female stripping and dancing." (*Id.*)[4]  The affidavit says that Ratcliff reviewed the files and they were "highly suggestive of child pornography." (*Id.*)

The affidavit next says:

> Further investigation shows that the aforementioned IP address was registered to Cox Communications in Louisiana <u>at the exact times and dates of the commission of the crime</u>.  Additional investigation by means of subpoenas to Cox Communications in Louisiana, and that company's response to the subpoena, indicates that <u>on the exact dates and times of the commissions of the crime</u>, IP Address "[XXX.XX.XXX].97" and "[XX.XXX.XXX].19" was being used by persons at [Defendant's physical address, as identified in the responses to the Cox Communications subpoenas].

---

[4] The "stripping and dancing" language on the affidavit is partially obscured by Ratcliff's file number, which is sprawled across the middle of the page. (*See* Mot. Hr'g Tr., 34, Dec. 13, 2016, Doc. 49.)  However, other documents make it clear that "stripping and dancing" is what happened on this video and what was written on the affidavit of probable cause. (*See* Def. Ex. 6 at 1–2.)

(*Id.* (underline added).)  Ratcliff testified that these statements were correct, though the first

download did not happen in May but instead happened in March. (Mot. Hr'g Tr., 37–39, 64–65

Dec. 13, 2016, Doc. 49.) Ratcliff acknowledged though that, when the judge read the "exact

dates and times of the commission of the crime," the only dates she knew were May 5th and June

13th. (*Id.* at 70.)

On September 23, 2015, Judge Bonnie Jackson signed the search warrant. (*Id.* at 40; Def.

Ex. 12.)  Defendant now seeks to suppress the results of that search.

## II.     Motion to Suppress

### A.  Parties' Arguments

#### 1. Defendant's Motion to Suppress (Doc. 39)

The Defendant claims that the affidavit contains the following material false statement:

"Further investigation shows that the aforementioned IP address was registered to Cox

Communications in Louisiana **at the exact times and dates** of the commission of the crime"

(Doc. 39-1 at 8 (citing Def. Ex. E (Doc. 39-6) (emphasis by Defendant)).)  The Defendant asserts

that Ratcliff says the first direct contact with IP Address XXX.XX.XXX.97 was on May 5, 2015,

but Cox's responses to the subpoena provided information for March 29 and 30.

The Defendant argues there is no information for the IP address on May 5, 2015.  The

Defendant contends that Ratcliff gave the false impression that he consulted with Cox and

verified the IP address on May 5, 2015 when in fact he had not.  According to Defendant, this is

material because the IP Address at the Defendant's physical address changed at some point

between March 29, 2015 (when it was XXX.XX.XXX.97) and June 13, 2015 (when it was

XX.XXX.XXX.19).  Thus, at some point prior to May 5, 2015, the IP address could have

changed, thereby severing the link to the Defendant's house on that date.

The Defendant further claims that several internal investigation reports show that the download happened on May 5, 2015.  For example:

- In the "Summary Memorandum" from the Louisiana DOJ Investigation Division, dated October 5, 2015, and "reported by" Louis Ratcliff, Ratcliff states that, on May 5, 2015 he downloaded the child pornography using Bit Torrent; that, on May 6, 2015, he prepared an administrative subpoena to Cox regarding IP address XXX.XX.XXX.97 for March 29 and 30, 2015; and that on May 28, 2015, Cox responded. (Def. Ex. 6; Def. Ex. G, Doc. 39-8).

- In an "Investigative Memorandum" from the same agency and division dated May 5, 2015, Ratcliff wrote that, "On May 5, 2015, Investigator Louis Ratcliff . . . was conducting undercover operations involving Pornography Involving Juveniles" and that, using "Bit Torrent", he downloaded child pornography from IP address XXX.XX.XXX.97. (Def. Ex. 1; Def. Ex. H, Doc. 39-9.)

- In an "Investigative Memorandum" dated May 6, 2015 from the state DOJ, investigative division, Ratcliff wrote about how he prepared administrative subpoenas to Cox regarding IP address XXX.XX.XXX.97 for March 29 and 30. (Def. Ex. 2; Def. Ex. I, Doc. 39-10.)

The Defendant argues that these documents show more than simple negligence.  Ratcliff had these reports "at his fingertips," and they demonstrated that the "at the exact date and time" language was false. (Doc. 39-1 at 10.)  Nevertheless, he made misrepresentations to Judge Bonnie Jackson.  Defendant states that Ratcliff "had to have entertained more than serious doubts as to the truth of his allegations contained in the statement for probable cause because he was steward of all the information related to the investigation.  The Investigator's actions are at a minimum in reckless disregard of the truth." (Doc. 39-1 at 10.)  The Defendant claims that recklessness can be inferred from the materiality.

The Defendant says that, without the false portion, no judge would find that there was probable cause.  The affidavit says:

Further investigation shows that the aforementioned IP address was registered to Cox Communications in Louisiana at the exact times and dates of the commission of the crime.  Additional investigation by means of subpoenas to Cox Communications in Louisiana, and that company's response to the subpoena,

> indicates that on the exact dates and times of the commissions of the crime, IP
> Address "[XXX.XX.XXX.97]" and "[XX.XXX.XXX.19]" was being used by
> persons at [Defendant's physical address.]

(Def. Ex. 11; Def. Ex. E, Doc. 39-6.)  Based on this, Ratcliff attested that there was probable

cause for a search warrant to search that address.

Defendant claims that Ratcliff had no evidence of the IP address on May 5, so this entire

paragraph should be removed.  The investigations were intertwined, and both IP addresses were

included in one paragraph.  Thus, the whole paragraph needs to be purged.

## 2. Government's Opposition (Doc. 44)

The Government concedes that there is "incorrect information" in the affidavit.

Specifically, the Government notes:

> It is important to note that the inaccurate information contained in the affidavit
> that has caused all of the confusion here is the statement that reads, in part, "On
> May 5, 2015, Investigator Louis Ratcliff . . . was conducting undercover
> operations involving Pornography Involving Juveniles . . . During this undercover
> operation … Inv. Ratcliff was able to obtain multiple single source downloads
> from the user using IP Address '[XXX.XX.XXX].97.'" According to Inv.
> Ratcliff, he drafted the reports on May 5, 2015, and mistakenly listed that date as
> the date of the downloads when the downloads had actually occurred on March 29
> and 30, 2015.

(Doc. 44 at 3 n. 1.)

The Government claims that the statements at issue support the investigation.  The

Government says that "[t]he statement at issue essentially reports that the IP Addresses,

'[XXX.XX.XXX].97' and '[XX.XXX.XXX].19' were registered to an individual at

[Defendant's physical address], on the 'exact dates and times' of multiple instances of

undercover child pornography downloads from the IP Addresses." (Doc. 44 at 3.)  The

Government asserts that, according to Ratcliff, he downloaded child pornography from IP

Address [XXX.XX.XXX].97 on March 29, 2015 at approximately 08:18:48 pm and again at

7

approximately 12:31:17 am on March 30, 2015.  Def. Ex. B (Doc. 39-3; Def. Ex. 5), which is

Cox's response to the subpoena, shows that that IP address was registered to a person at the

Defendant's physical address on those dates and times.   Thus, according to the Government,

Ratcliff's statement in the affidavit that IP address XXX.XX.XXX.97 was registered to an

individual at the Defendant's physical address "on the 'exact dates and times' of the child

pornography downloads is a truthful statement." (Doc. 44 at 4.)  Thus, the Government asserts

that the Defendant has not made a *substantial* showing of a materially false statement.

As to Ratcliff's intent, the Defendant is arguing, according to the Government, that

Ratcliff made one drafting error, so he must have perjured himself or acted in reckless disregard

for the truth.  The Government claims "This is an absurd and offensive allegation.  The idea that

the Government would intentionally, or even recklessly, fabricate the content of an affidavit in

order to obtain a search warrant when the affidavit contains more than enough information

notwithstanding the inaccurate statements is ridiculous."  (Doc. 44 at 4.)  The Government calls

the Defendant's statements wholly unsupported.  Ratcliff made no "more than mere

typographical misstatements of the relevant dates.  This is, no doubt, the type of mistake that

anyone can make.  Word processing errors are common even for the most astute typists." (*Id.* at

5.)  The Government concedes that Ratcliff could have been more careful in typing his reports,

but that does not amount to intentional or reckless behavior.

The Government claims that, even assuming that the Defendant had satisfied the above two

requirements and the incorrect information were removed, the remaining portion would support a

finding of probable cause.  The Defendant only complains about the portion containing IP Address

XXX.XX.XXX.97 allegedly used on May 5, 2015.   The Defendant claims this was merely a

technical error and does not change the fact that Ratcliff downloaded child pornography from the

IP addresses associated with the Defendant on the exact dates and times of the downloads.

### 3. Defendant's Post-Hearing Memorandum (Doc. 55)

In Defendant's twenty-six page post-hearing memorandum, he argues that Ratcliff's

affidavit of probable cause included false statements.  Specifically, the affidavit was false when

it claimed that, "On May 5, 2015, . . . Ratcliff . . . was conducting undercover operations," and,

"[d]uring this undercover operation," Ratcliff downloaded child pornography from the user using

the IP address XXX.XX.XXX.97. (Def. Ex. 11.)  Defendant says the statement is false because

Ratcliff now claims the download happened on March 29–30.

Defendant also claims that the following underlined language is false:

> Further investigation shows that the aforementioned IP address was registered to
> Cox Communications in Louisiana at the exact times and dates of the commission
> of the crime.  Additional investigation by means of subpoenas to Cox
> Communications in Louisiana, and that company's response to the subpoena,
> indicates that on the exact dates and times of the commissions of the crime, IP
> Address "[XXX.XX.XXX].97" and "[XX.XXX.XXX].19" was being used by
> persons at [Defendant's physical address, as identified in the responses to the Cox
> Communications subpoenas].

(Def. Ex. 11 (underline added).)  Defendant says Ratcliff represented that this occurred on May

5, 2015 and omitted the correct date.

Defendant also asserts that Ratcliff knowingly and intentionally, or with reckless

disregard for the truth, included the false statements in the search warrant.  The Defendant points

to the numerous times Ratcliff made this error on internal police documents and the conflict

between these documents and his testimony and the first subpoena to Cox.  "In this case one

story is being told by the documentary evidence and another is being told by Ratcliff." (Doc. 55

at 12.)  This shows, Defendant says, a reckless disregard for the truth.  Defendant cites as other

examples the use of different interpretations of "date of recovery" on two different evidence

forms and Ratcliff telling his supervisor of certain information not included in reports. (*Id.* at 13–14.)

Defendant maintains that this information was necessary to a finding of probable cause and in fact provides the most important facts: the date of the alleged offense and the link between the address to be searched and the alleged criminal conduct.  Defendant claims that Ratcliff lacked any evidence of the IP address on May 5, 2015, despite his representations.  Defendant asserts: "If Judge Jackson knew that there was no link between the date stated in the affidavit, May 5, 2015, and the address to be searched she could not have found probable cause to issue the search warrant." (Doc. 55 at 15.)  The Defendant claims that the Government was even induced by the false statement, as this led to the incorrect date on the original indictment.

The Defendant contends that the entirety of the following two paragraphs should be "purged" from the affidavit of probable cause:

> On May 5, 2015, Investigator Louis Ratcliff, with the Louisiana Attorney General's Office Cyber Crime Unit was conducting undercover operations involving Pornography Involving Juveniles, as defined in La. R.S. l4:81.1. During this undercover operation, using "Bit Torrent" as the client for peer to peer file sharing, Investigator Louis Ratcliff was able to obtain multiple single sourced downloads from the user using IP Address "[XXX.XX.XXX].97."
>
> . . .
>
> Further investigation shows that the aforementioned IP address was registered to Cox Communications in Louisiana at the exact times and dates of the commission of the crime.  Additional investigation by means of subpoenas to Cox Communications in Louisiana, and that company's response to the subpoena, indicates that on the exact dates and times of the commissions of the crime, IP Address "[XXX.XX.XXX].97" and "[XX.XXX.XXX].19" was being used by persons at [Defendant's physical address, as identified in the Cox subpoenas]."

(Def. Ex. 11.)  Defendant argues that this is necessary because Ratcliff combined his investigations into a single one.  Absent these paragraphs, there is nothing linking Defendant or

his residence to the instant charges.  As a result, no judge could find probable cause from the remaining portions of the affidavit, and, consequently, the motion to suppress evidence from the residence should be granted.

Defendant also devotes some of his post-hearing brief to his motion to reconsider admitting the proffered testimony. (Doc. 50.)  The Defendant summarized the proffered testimony, focusing on (a) another May 5/March 29–30 discrepancy and (b) certain statements in Ratcliff's October 5, 2015, Investigative Memorandum and his arrest warrant affidavit (the latter of which said "Several computers had been located in Christopher [Waguespack]'s room and was actively searching 'Bit Torrent' (Peer to Peer) software for child pornography" (Doc. 55 at 18–19; Def. Ex. 13)) and on-site forensic Darrell Miller's testimony that this was not the case. The Defendant asserts that the proffered evidence is relevant to the issue of Ratcliff's credibility.

### 4. Government's Post-Hearing Memorandum (Doc. 58)

Though the Government admits that "imprecise and confusing information" was included in the affidavit of probable cause, the Government asserts that this does not meet the *Franks* standard. (Doc. 58 at 2.) The Government maintains that the affidavit correctly demonstrates that an individual at the residence in question with IP address XXX.XX.XXX.97 was distributing child pornography to others, even if the date listed on the affidavit (May 5) was inaccurate.

The Government argues that the Defendant is trying to "capitalize on Inv. Ratcliff's clumsy writing skills" to have the Court conclude that there was no probable cause without the incorrect information. (Doc. 58 at 2–3.)  The Government states:

> [T]he fact remains that during an undercover operation, child pornography was downloaded from IP Address [XXX.XX.XXX].97, which was registered to the defendant's residence at the time of the download. Based on this, taken together with the fact that Inv. Ratcliff also later downloaded child pornography from a separate IP Address also registered to this same residence, the judge found probable cause that evidence of an offense involving child pornography would be

found at this residence. Whether the first set of downloads occurred in March or May is immaterial to this finding. What truly matters here, is that law enforcement obtained multiple downloads of child pornography from the defendant's residence over an extended period of time. As such, it was more probable than not, that if searched, the residence would reveal evidence related to child pornography offenses.

(Doc. 58 at 3.)  Thus, "notwithstanding drafting errors and poorly crafted language in the affidavit, the search warrant . . . was supported by probable cause." (Doc. 58 at 3.)

The Government also contends that the Court should deny the motion to reconsider the proffered testimony.  The Government says that the Defendant is trying to "muddy the waters" by asking the Court to consider "facts and testimony [that are] completely unrelated" to the issues involved in this motion and that "took place well after the search warrant was issued in this case." (Doc. 58 at 4.)  The Defendant is merely trying to "highlight[] errors in the investigation and [to] attempt[] to embarrass Inv. Ratcliff with his missteps." (Doc. 58 at 4.) Though this may be relevant at trial, the Government says, it has no place at the motion to suppress stage.

### B.  The *Franks* Standard

"The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164, 98 S. Ct. 2674, 2681, 57 L. Ed. 2d 667 (1978).  The Amendment itself provides in relevant part that "no warrant shall issue, but upon probable cause, supported by Oath or affirmation[.]" U.S. Const. amend. IV. "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks*, 438 U.S. at 164–65, 98 S. Ct. at 2681 (quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966) (emphasis in original)). "Truthful" is meant "in the sense that the information

put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165, 98 S. Ct. at 2681.

*Franks* "set[s] out the legal principles that govern how courts are to address a defendant's allegations of false statements in warrant affidavits[.]" *United States v. Looney*, 532 F.3d 392, 394 (5th Cir. 2008) (per curiam).  In *Franks*, the Supreme Court reversed the Supreme Court of Delaware, which had held, that "a defendant under *no* circumstances may so challenge the veracity of a sworn statement used by police to procure a search warrant."  438 U.S. at 155, 98 S. Ct. at 2676 (emphasis in original).  The *Franks* court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.*, 438 U.S. at 155–56, 98 S. Ct. at 2676; *see also Looney*, 532 F.3d at 394 (quoting *Franks*). At the end of its opinion, the *Franks* Court "repeat[ed] with some embellishment" its holding from the beginning of the opinion:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Franks*, 438 U.S. at 171–72, 98 S. Ct. at 2684–85 (footnote omitted).

Thus, the Fifth Circuit "will not uphold an officer's good faith reliance on a warrant if 'the issuing-judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." ' " *United States v. Gallegos*, 239 F. App'x 890, 894–95 (5th Cir. 2007) (quoting *United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005)). "In evaluating this argument," the Fifth Circuit "appl[ies] the standard from *Franks* . . . , which requires a defendant to show that '(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause.' " *Gallegos*, 239 F. App'x at 895 (quoting *Untied States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006)); *see also United States v. Cavazos*, 288 F.3d 706, 709–10 (5th Cir. 2002) (describing same *Franks* standard).

### C.  Analysis

Having carefully considered the law, the record, and the arguments and submissions of the parties, the Court finds that the Defendant's motion should be denied.  In sum, the Defendant has failed to satisfy both elements of the *Franks* test.

### 1. Ratcliff's Mens Rea

First, the Defendant has failed to prove that Ratcliff had the requisite intent.  *Franks* established that "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth. . . . Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171,

14

98 S. Ct. at 2684.  "[E]ven if the defendant proves that one or more statements in the affidavit are false, and yet fails to prove that the affiant deliberately or recklessly included such false information in the affidavit, the court may consider the entire affidavit—without any excision—under the good-faith exception to the exclusionary rule." *Looney*, 532 F.3d at 394 (citing *Cavazos*, 288 F.3d at 710); *see also United States v. Astroff*, 578 F.2d 133, 136 (5th Cir. 1978) ("In the instant case, it is clear that only a negligent misrepresentation was involved. Under Franks, therefore, the search warrant was valid, and even a hearing to consider allegations of negligent misrepresentation was unnecessary.")

Here, though the Defendant has certainly shown—at great length—that the affidavit of probable cause contained false information when it used the May 5 date rather than the March 29–30 one, the Defendant has not sustained his burden of proving, by a preponderance of the evidence, that Ratcliff made these statements "knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155–56, 98 S. Ct. at 2676.  The Court heard Ratcliff's testimony and observed his testimony, and the Court agrees with his assessment that listing the incorrect date was merely an "error."  At best, the Defendant has shown mere negligence, and this is insufficient under *Franks*.

This conclusion is bolstered by (though not dependent upon) the fact that the Court believes that Ratcliff made no misstatement in his affidavit of probable cause with the following:

> Further investigation shows that the aforementioned IP address was registered to Cox Communications in Louisiana at the exact times and dates of the commission of the crime.  Additional investigation by means of subpoenas to Cox Communications in Louisiana, and that company's response to the subpoena, indicates that on the exact dates and times of the commissions of the crime, IP Address "[XXX.XX.XXX].97" and "[XX.XXX.XXX].19" was being used by persons at [Defendant's physical address, as identified in the Cox subpoenas].

(Def. Ex. 11.)  The Court agrees with the Government that these statements were accurate, even if the May 5 date was inaccurate; ultimately, this part of the affidavit is correct in that (1) the two IP addresses were registered to Cox "at the exact times and dates of the commission of the crime" and (2) at those dates and times, the IP addresses were being used by a person at the Defendant's physical address.

The Court's decision is also bolstered by the fact that the Defendant has failed to explain why Ratcliff would have the motive to lie on the affidavit of probable cause.  As the Government explains, and as will be explored below, Ratcliff had sufficient information without lying to obtain a search warrant.  There is simply no reason for Ratcliff to lie here, and that too leads the Court to conclude that his error about the date was mere negligence.

Both the Government and the Defendant cite to Fifth Circuit case law, but the Government's case law is stronger.  The Government cites to *United States v. Hall*, No. 15-40284, 2016 WL 3667580, at *2–*3 (5th Cir. July 8, 2016), *cert. denied,* (U.S. Nov. 28, 2016) (per curiam), where the Fifth Circuit affirmed the denial of a motion to suppress.  In *Hall*, the warrant affidavit stated that the affiant had, within the past seventy-two hours, interviewed a "reliable confidential informant" and that "the informant told him that there was methamphetamine at the House." *Id.* at *2.  But, at the suppression hearing, the officer admitted that another officer had been the one to interview the informant.  *Id.*

The Fifth Circuit explained that, "for a false statement to prevent application of the good-faith exception, the statement must be made with the requisite mens rea, i.e., either intentionally or with reckless disregard for the truth." *Id.* (citing *Cavazos*, 288 F.3d at 709–10).  The district court found the officer's "testimony that the false statement was simply a mistake 'credible and uncontroverted,' " which "implicitly [found] that [the officer] did not act with the requisite

culpability." *Id.* The Fifth Circuit found the officer's "explanation that the false statement was a mistake to be plausible" and that the Defendant had failed to show that the district court's finding about the officer's mens rea was clear error. *Id.* Thus, the officer's "false statement [did] not prevent application of the good-faith exception." *Id.* (citation omitted).

The same reasoning applies here. The Court finds Ratcliff's testimony that he was mistaken credible and plausible. He lacked the requisite culpability and mens rea.

Indeed, *Hall* is very strong support for the Government. In *Hall*, the alleged mistake was much more implausible than the one here; that is, it seems more believable that someone would be mistaken as to a date (May 5 versus March 29–30) than as to whether he (as opposed to another officer) talked to a confidential source. Yet the *Hall* court upheld the district court's finding of a mistake. If a mistake could be found in *Hall*, then it certainly could be found here.

Defendant cites *United States v. Namer*, 680 F.2d 1088 (5th Cir. 1982), but it does not seem as strong and its holding is limited by a later case. In *Namer*, the Fifth Circuit gave guidance in interpreting this *Franks* requirement as follows:

> Franks and its lower court progeny offer little guidance to us in determining whether a misrepresentation has been made intentionally or with reckless disregard for the truth, on the one hand, or negligently, on the other. In United States v. Martin, 615 F.2d 318, 328 (5th Cir. 1980), this court was faced with an omission from, as opposed to a misrepresentation in, an affidavit. The panel recognized that this circuit treats omissions essentially the same as misstatements. Id. More pertinent to our inquiry, the court noted that "(i)t is possible that when the facts omitted from the affidavit are clearly critical to a finding or probable cause the fact of recklessness may be inferred from proof of the omission itself." Id. at 329. This recognition that the analytical concepts of materiality and recklessness are often bound together is significant in this case. The misrepresentation was a crucially material one. From that finding of vital materiality and other circumstances surrounding the investigation, we conclude that the misrepresentation was made, at the least, with reckless disregard for the truth.

*Id.* at 1094.  Thus, in *Namer*, the court found that the officer acted in reckless disregard for the truth for the following reasons:

> The search warrant application was drafted by three members of the Economic Crime Unit of the Orleans Parish District Attorney's Office after a year-long investigation into Namer's [(i.e., the defendant's)] business affairs. The two principal draftsmen were attorneys with at least some exposure to the legal and factual intricacies often involved in detecting and prosecuting white-collar crime. It is not shown that they acted in a hurried fashion. Rather, we presume from the pace of the investigation and the frequency of their conversations with Stansbury [(the Deputy Commissioner of Securities for the State of Louisiana)] that they acted deliberately and that they were aware of the novelty of their legal theory. We also note that a strong opinion from Stansbury was the best, if not only, hope for conferring an aura of legitimacy on their legal theory. Given all of the above-lengthy investigation, draftsmen trained in the law with experience in white-collar criminal prosecution, lack of exigency, novel legal theory, appreciation of the importance of Stansbury's opinion, and understanding of the informal process by which Stansbury reached and rendered his opinion-we conclude that the members of the Economic Crime Unit proceeded in reckless disregard of the truth when they characterized Stansbury's ad hoc, oral opinion as a "classification." The circumstances surrounding the investigation and warrant application permit no other reasonable conclusion.

*Id.*  Indeed, it is also worth noting that, elsewhere, the *Namer* court (1) stated that the government's theory could be "characterized, at best, as novel, and, at worst, as frivolous" and (2) described how the "District Attorney's Office camouflaged the novelty of the legal theory under which it was proceeding." *Namer*, 680 F.2d at 1092.

However, in *Gallegos*, the Fifth Circuit appeared to limit *Namer*, explaining:

> Two decisions from this court demonstrate the sort of evidence that meets this burden to prove that an officer acted intentionally or with reckless disregard for the truth. *See* [*United States v. Alvarez*, 127 F.3d 372, 375 (5th Cir. 1997)]; *United States v. Namer,* 680 F.2d 1088, 1094 (5th Cir. 1982). In concluding that an officer recklessly disregarded the truth in *Alvarez,* we went through a laundry list of reasons the officer in that case was reckless:

> > The lack of exigency, [police officer] Rivera's level of training and experience, his failure to consult with an attorney, his failure to disclose in the affidavit the facts underlying his conclusory statements, coupled with

18

> Rodriguez's statement that Alvarez claimed to have other similar tapes (there was no testimony that the other tapes were more explicit), and the fact that Rivera's only justification for proceeding with the warrant application was his testimony that he believed breasts were genitals, lead us to conclude that Rivera acted in reckless disregard for the truth.
>
> *Alvarez,* 127 F.3d at 375. In *Namer,* a similar list of factors compelled our conclusion that law enforcement recklessly disregarded the truth: Attorneys drafted the affidavit, they had experience with this type of case, no exigency or haste preceded the affidavit, and the attorneys understood the importance of being accurate. *Namer,* 680 F.2d at 1094.

*Gallegos*, 239 F. App'x at 895. Since the defendant did "not present this sort of evidence of intent or recklessness" and "offer[ed] no proof that [the officer] intended his statements to be false or acted in reckless disregard for the truth," the district court did not err in denying the motion to suppress. *Id.*

Thus, *Namer* does not provide the Defendant as much support as *Hall* provides to the Government.  Though Defendant elicited testimony that Ratcliff had training about the importance of being accurate and may not have been in haste in the investigation, some of the other *Namer* and *Alvarez* factors are not present here: (1) there's no evidence that Ratcliff failed to disclose *material* information[5]; (2) Ratcliff's statements were not "conclusory," as in *Alvarez*; (3) there's no "novel" or "frivolous" legal theory here; (4) Ratcliff did not act "deliberately," as in *Namer*; and (5) the mistake here is less severe than the ones in *Namer* and *Alvarez*.[6]  Perhaps most importantly, unlike *Namer*, there is a reasonable conclusion other than reckless disregard, and that is mere negligence.

---

[5] Consequently, though Defendant is correct that, in *Namer*, the Court held that the officer's mens rea can be inferred from materiality, this is of no moment.  Again, Ratcliff's false statement (May 5 rather than March 29–30) is immaterial.

[6] *Alvarez* concluded: "In the final analysis, we simply cannot accept the premise that an officer with Rivera's qualifications could in good faith believe that breasts are genitals. Or to say it in the context of the Texas statute, that the one second exposure of a young girl's breasts amount to a 'lewd exhibition of the genitals.' " *Alvarez*, 127 F.3d at 375.  This is a far cry from Ratcliff's writing a date incorrectly.

The Court has also considered the evidence proffered by the Defendant. (Doc. 50.)  The Court finds that this evidence does not demonstrate that Ratcliff "knowingly and intentionally, or with reckless disregard for the truth" included false information in the affidavit of probable cause.  As the Government correctly argued, most of the information from the proffers involve conduct by Ratcliff after the affidavit of probable cause was executed.  Moreover, even assuming the Court considered this evidence for the sake of Ratcliff's credibility, the Court still concludes, based on its personal observation of and listening to Ratcliff's testimony, that Ratcliff was telling the truth and that he simply made a mistake with the May 5 date.  Thus, even if the Court were to consider the proffered evidence, the Defendant has not met his burden with it.  In sum, the Defendant has failed to satisfy the first *Franks* requirement.

### 2. Probable Cause Without the False Statement

Nevertheless, even if the Defendant had met his burden on the first *Franks* issue, the Court also finds that the Defendant has failed to satisfy his burden of proving the second *Franks* requirement.  "If a defendant establishes that a false statement was made either intentionally or with reckless disregard for the truth by a preponderance of the evidence, 'we must then excise the offensive language from the affidavit and determine whether the remaining portion would have established the necessary probable cause.' " *Hall*, 2016 WL 3667580, at *3 (quoting *Franks*, 438 U.S. at 710).

Here, the Court disagrees with the Defendant; even if Ratcliff lied about the date, the solution would not be to delete the entirety of the following two paragraphs:

> On May 5, 2015, Investigator Louis Ratcliff, with the Louisiana Attorney General's Office Cyber Crime Unit was conducting undercover operations involving Pornography Involving Juveniles, as defined in La. R.S. l4:81.1. During this undercover operation, using "Bit Torrent" as the client for peer to peer file sharing, Investigator Louis Ratcliff was able to obtain multiple single sourced downloads from the user using IP Address "[XXX.XX.XXX].97."

. . .

Further investigation shows that the aforementioned IP address was registered to Cox Communications in Louisiana at the exact times and dates of the commission of the crime.  Additional investigation by means of subpoenas to Cox Communications in Louisiana, and that company's response to the subpoena, indicates that on the exact dates and times of the commissions of the crime, IP Address "[XXX.XX.XXX].97" and "[XX.XXX.XXX].19" was being used by persons at [Defendant's physical address, as identified in the Cox subpoenas]."

(Def. Ex. 11.)  Again, the only false statement is the "May 5, 2015" date; the entirety of the paragraph beginning "Further investigation . . ." remains correct.  The Court has no doubt that this paragraph, combined with the rest of the affidavit (which describes further downloads in June 2015) sufficiently sets forth a basis for probable cause.[7]  On this additional ground, Defendant's motion to suppress is denied.

### III.   Defendant's Motion for a Pre-Trial Copy of the Transcript of the Grand-Jury Proceeding

#### A.  Parties' Arguments

Much like his motion to suppress, Defendant's argument for the second motion centers on the discrepancies between, on the one hand, the Cox Communications subpoena and Ratcliff's testimony (reflecting that Ratcliff connected with the Defendant's computer on March 29–30, 2015), and, on the other hand, Ratcliff's affidavit of probable cause and the original indictment (reflecting criminal activity at Defendant's residence on May 5, 2015).  Defendant essentially argues that these discrepancies shows that Ratcliff may have lied to the Grand Jury.

---

[7] "A probable cause determination is a 'practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Cavazos*, 288 F.3d at 710 (quoting *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir. 1994)). "Of course, 'probable cause' means something more than 'mere suspicion[.]' " *United States v. Gordon*, 580 F.2d 827, 832 (5th Cir. 1978) (citing *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). "Probable cause requires the existence of facts '[] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed' and the person to be arrested (or searched) committed it,[.]" *Id.* (quoting *Brinegar*, 338 U.S. at 175, 69 S. Ct. 1302)).

Defendant contends that Ratcliff's lying may form the basis for a motion to dismiss due to the prosecution's knowing use of false testimony, so, under Fed. R. Crim. P. 6(e)(3)(E)(ii), he's entitled to a transcription of the grand jury proceeding. Defendant seeks disclosure of "the grand jury transcripts." (Doc. 54 at 5.)

Conversely, the Government contends that the Defendant has failed to satisfy the requirements for disclosure under this rule.  The Government says that the Defendant's assertions are conclusory and unsupported, that Ratcliff merely made a "typographical" error, and that the Defendant's request is not limited only to what he needs.  In its post-hearing briefing, the Government also asserts that, even if Ratcliff gave confusing or misleading testimony to the Grand Jury about Defendant engaging in criminal activity on May 5, 2015, in connection with the original Indictment, any prejudice the Defendant may have suffered was cured by the Superseding Indictment, which alleges misconduct on March 29–30, 2015.

### B.   Standard Governing Disclosure of the Grand Jury Testimony under Fed. R. Crim. P. 6(e)(3)(E)(ii)

"[U]nder . . .  federal . . .  law, a general rule of secrecy shrouds the proceedings of grand juries."  *Shields v. Twiss*, 389 F.3d 142, 147–48 (5th Cir. 2004) (citing Fed. R. Crim. P. 6(e); *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 218–19, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979)). In fact, "[t]he proper functioning of the grand jury system depends upon the secrecy of the grand jury proceedings." *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993) (citing *Douglas Oil*, 441 U.S. at 224–225, 99 S. Ct. at 1676); *see also United States v. Madrid*, 610 F. App'x 359, 373 (5th Cir.) (citing *Miramontez*), *cert. denied,* 136 S. Ct. 379, 193 L. Ed. 2d 306 (2015)

Nevertheless, Federal Rule of Criminal Procedure 6(e) provides exceptions to this general rule of secrecy. *See Miramontez*, 995 F.2d at 59; *In re Grand Jury Testimony,* 832 F.2d 60, 62 (5th Cir. 1987).  Here, Rule 6(e)(3)(E)(ii) is applicable.  This section provides:

> **(E)** The court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter:  **. . . (ii)** at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;

Fed. R. Crim. P. 6(e)(3)(E)(ii).  One ground for dismissing an indictment is if the prosecution knowingly used false testimony and the defendant was prejudiced thereby. *See, e.g.*, *United States v. Whitfield*, 590 F.3d 325, 359 (5th Cir. 2009) ("a district court may not dismiss an indictment for errors in grand jury proceedings unless such error prejudiced the defendant. Whether or not prosecutorial misconduct prejudiced a defendant depends on whether it affected the grand jury's decision to indict" (citations omitted)); *United States v. Strouse*, 286 F.3d 767, 772 (5th Cir. 2002) (holding that "perjury before the grand jury that was not knowingly sponsored by the government may not form the basis for a district court's dismissal of an indictment under its supervisory power"); *United States v. Cavallo*, 790 F.3d 1202, 1219–20 (11th Cir. 2015) ("As a general matter, to establish prosecutorial misconduct for the use of false testimony, a defendant must show that the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony, and that the falsehood was material.").

At the outset, it is important to note that "[a] district court's denial of a motion for disclosure of grand jury transcripts under Rule 6(e) is reviewed for an abuse of discretion." *Miramontez*, 995 F.2d at 59 (citing *Douglas Oil,* 441 U.S. at 223–224, 99 S. Ct. at 1675; *In re Grand Jury Testimony,* 832 F.2d at 62); *see also United Kingdom v. United States*, 238 F.3d 1312, 1320 (11th Cir. 2001) ("The Supreme Court has repeatedly stressed the wide discretion

given district courts in evaluating whether disclosure of grand jury materials would be appropriate." (citing *United States v. John Doe, Inc. I*, 481 U.S. 102, 116, 107 S. Ct. 1656, 95 L. Ed. 2d 94 (1987)); 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 110 (4th ed. 2016) ("A court's decision whether to release grand jury material is afforded great deference, and its decision will be reversed only for an abuse of discretion.").

"The burden is on the party seeking disclosure to show that 'a particularized need' exists for the materials that outweighs the policy of secrecy." *Miramontez*, 995 F.2d at 59 (citing *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S. Ct. 1237, 1241, 3 L. Ed. 2d 1323 (1959)); *see also Shields*, 389 F.3d at 147 ("federal . . .  law permit[s] discovery of grand jury material when the party seeking discovery demonstrates a 'particularized need' for the material." (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682–83, 78 S. Ct. 983, 2 L. Ed .2d 1077 (1958)); *In re Grand Jury Testimony*, 832 F.2d at 62–63 (citing *Douglas Oil*, 411 U.S. at 223, 99 S. Ct. at 1675).  The party seeking disclosure "must demonstrate that (1) the material he seeks is needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) his request is structured to cover only material so needed." *Miramontez*, 995 F.2d at 59 (citing *Douglas Oil*, 441 U.S. at 221–222, 99 S. Ct. at 1674); *see also Madrid*, 610 F. App'x at 373 (citing *Miramontez*); *Shields*, 389 F.3d at 147 (citing *Douglas Oil*); *In re Grand Jury Testimony*, 832 F.2d at 62 (citing *Douglas Oil*).

Ultimately, "[t]he requirement that a defendant show a 'particularized need' for grand jury material is by definition a fact-intensive inquiry that is difficult to quantify." 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 108 (4th ed. 2016).  The Fifth Circuit has recognized that, " '[a]s the considerations justifying secrecy become less relevant, a

24

party asserting a need for grand jury transcripts will have a lesser burden in showing justification.' " *In re Grand Jury Testimony*, 832 F.2d at 62–63 (quoting *Douglas Oil*, 411 U.S. at 223, 99 S. Ct. at 1675).  But the Fifth Circuit has also cautioned: "While a party can in limited circumstances obtain grand jury material by showing a particularized need, the need for protection of the workings, integrity, and secrecy of grand jury proceedings is a well-established, long-standing public policy." *Shields*, 389 F.3d at 147.  Further, "[t]he secrecy of the grand jury proceedings is not something that is intruded into except in rare circumstances." *Id.* at 147–48.

### C.  Analysis

Applying the above principles to the instant motion, the Court finds that the Defendant has not satisfied his burden for obtaining the grand jury materials.  Specifically, the Defendant has failed to satisfy the three *Douglas Oil* requirements.

### 1. Disclosure is Not Necessary to Avoid a Possible Injustice

First, the Defendant has not demonstrated that the information is needed to avoid a possible injustice.  The Defendant is correct that there is a discrepancy between the subpoenas to Cox and Ratcliff's testimony (reflecting illegal activity at the IP address in question on March 29 and 30, 2015) and the affidavit of probable cause and original indictment (reflecting illegal activity at that IP address on May 5, 2015).  As the Government concedes, Ratcliff's testimony on this issue is confusing at times.

But the Defendant has presented no evidence (other than the discrepancy) that Ratcliff was lying with these dates, as opposed to simply making an error.  On several occasions, the Fifth Circuit has found that a defendant failed to show a "particularized need" when his allegations were unsubstantiated.  *See Shields*, 389 F.3d at 147–48 (5th Cir. 2004) (finding that plaintiff had failed to show "a particularized need for compelling the disclosure of grand jury

information" when he had "not . . . put forward any evidence whatsoever showing that [a deputy] and [assistant district attorney] withheld information from the grand jury" and had "presented no evidence that would justify a fishing expedition into the proceedings of the grand jury"); *Miramontez*, 995 F.2d at 59 (finding that *pro se* defendant did not show a " 'particularized need' under any of the three elements set forth in *Douglas Oil*" when "[h]is petition [was] wholly general and [did] not request any specific portion of the proceedings for disclosure" and when he described only "errors or defects in grand jury proceedings, such as perjury, . . ."  but did "not, however, assert that any of these errors or defects occurred in his own grand jury proceeding, *nor . . . hint at any evidence in the grand jury materials that might reveal the presence of such an error or defect*." (emphasis added)); *United States v. Tucker*, 526 F.2d 279, 282 (5th Cir. 1976) ("A defendant must show 'particularized need' to justify infringement of the secrecy surrounding a grand jury. Appellants' unsubstantiated assertions of improprieties before the grand jury do not approach such a showing." (citations omitted)).  Without more convincing evidence, the Defendant's mere accusations do not suffice.[8]

 Even putting this aside and assuming that there was better evidence of misconduct by Ratcliff, the Court agrees with the Government's post-hearing brief on this issue: the Superseding Indictment rectifies any potential injustice that the Defendant may have faced. Specifically, Count One of the Superseding Indictment charges that the Defendant distributed

---

[8] The Court also notes that, as explained above, "to establish prosecutorial misconduct for the use of false testimony, a defendant must show that the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *Cavallo*, 790 F.3d at 1219–20. Here, Defense counsel conceded at oral argument that he was "not alleging any wrongdoing by [the Assistant United States Attorney] in any regard." (Mot. Hr'g Tr., 73, Dec. 13, 2016, Doc. 49.)  He merely says that there was "an inaccuracy somewhere, right?" given the two different dates in the original and superseding Indictments.  More is needed to obtain a dismissal for misconduct before the Grand Jury.  This is further evidence that disclosure is not necessary to prevent an injustice.

child pornography "[b]etween on or about March 29, 2015, and on or about March 30, 2015." (Doc. 32 at 1.)  This appears to confirm that there was a basis for charging the Defendant of Count One, regardless of the confusion in Ratcliff's account.

But even more importantly, the Superseding Indictment demonstrates that the Defendant is not being charged with any conduct related to any activity on May 5, 2015.  As the Government correctly asserts, any harm or prejudice caused to the Defendant from any misstatements made by Ratcliff in connection with the original Indictment (which alleged misconduct on May 5, 2015) has been corrected by the Superseding Indictment (which alleged misconduct on March 29–39, 2015).   Phrased another way, even if Ratcliff lied to the grand jury and said that the illegal activity happened on May 5, 2015, the Defendant cannot prove that, but for the lie, he would not have been indicted on the new superseding Count One.  Quite simply, the matter now seems moot.

*United States v. Madrid*, 610 F. App'x 359 (5th Cir.), *cert. denied*, 136 S. Ct. 379, 193 L. Ed. 2d 306 (2015) is persuasive here.  In *Mardrid*, the defendant was indicted on eleven counts that included allegations that (1) the bribery of an individual appointed to oversee the management of a large federal grant was in part "to assist [a company] in fraudulently 'obtaining' the contract to provide . . . services under the [federal] grant," and (2) checks paid by the company to the administrator's friend "were mailed to her using the United States Postal Service (USPS), including the check . . . dated December 21, 2006."  *Id.* at 372.  The defendant filed a motion to disclose the grand jury transcripts. *Id.* The motion was supported with evidence and showed that the administrator "was not bribed to help [the company] '*obtain*' the evaluation services contract . . . but rather she was bribed on later dates to help "*maintain* and *renew*' the

contract." *Id.* The motion further argued that "the December 21 check was not sent . . . via USPS but, rather, was hand-delivered by [the co-defendant]." *Id.*

But, before the court ruled on the motion, a superseding indictment was filed. *Id.* at 372—73. This three-count superseding indictment, among other things, "omitted the allegations that the check . . . dated December 21, 2006, had been sent via USPS and , instead of alleging that [the administrator] had been bribed to help " '*obtain*' " the evaluative services contract, averred that [the defendant and co-defendant] had bribed [the administrator] to " '*maintain* the evaluation services contract . . . support defendant [company's] participation in the [Collaborative,] [and] defend [the company's] program to [the federal agency].' " *Id.* at 373 (emphasis in original).

The district court denied as moot the motion to disclose grand jury transcripts. *Id.* The district court based its decision on the changes made in the superseding indictment. *Id.*

The Fifth Circuit affirmed.  First, the appellate court rejected the defendant's argument that, but for the allegation in the original indictment about the December 21 check being sent via USPS, Count 3 would have been time-barred. *Id.*  The circuit court explained that the allegation about the December 21 check was omitted from the superseding indictment, and the latter indictment included other instances of mail fraud within the limitations period. *Id.*  Thus, the Defendant's "assertion that, but for the inclusion of the erroneous allegation regarding the December 21 check . . . , all of the mail fraud charges against [defendant] would have been time-barred is mistaken and without merit." *Id.* at 374.

Second, and more relevant here, the Fifth Circuit rejected the defendant's argument that denying the motion to disclose the grand jury transcripts prevented him from dismissing the indictment on the grounds that the government knowingly showed perjured testimony. *Id*.  The

defendant argued that he could have gotten the entire indictment dismissed in entirety. *Id.*  In

rejecting this argument, the appellate court stated:

> However, the mere fact that the original indictment may have erroneously set
> forth charges that the government would have been unable to prove—which
> required the corrections made by the superseding indictment—does not
> necessarily demonstrate perjury. Rather than a sign of knowingly false testimony,
> the discrepancy may have been due to an unintentional drafting error. Moreover,
> as a general rule, "[a]fter indictment, the judiciary's role in policing the credibility
> of witnesses before a grand jury is minimal." *United States v. Strouse,* 286 F.3d
> 767, 771 (5th Cir. 2002).
>
> As the Supreme Court decisions make clear, "the supervisory power can be used
> to dismiss an indictment because of misconduct before the grand jury, at least
> where that misconduct amounts to a violation of one of those 'few, clear rules
> which were carefully drafted and approved by this Court and by Congress to
> ensure the integrity of the grand jury's functions.' " *United States v. Williams,* 504
> U.S. 36, 46, 112 S. Ct. 1735, 118 L. Ed. 2d 352 (1992) (quoting *United States v.
> Mechanik,* 475 U.S. 66, 74, 106 S. Ct. 938, 89 L. Ed. 2d 50 (1986) (O'Connor, J.,
> concurring in judgment)) (footnote omitted). Because [defendant] failed to allege
> or show a violation of any such clear rule in the present case, we conclude that the
> district court did not abuse its discretion in denying his motion

*Id.*

The same reasoning applies here.  Even assuming that Ratcliff lied and stated that the

illegal activity occurred on the IP address in question at Defendant's physical address on May 5,

the Defendant cannot establish that, but for that lie, he would not have been indicted in the

Superseding Indictment for distributing child pornography on March 29—30.  Moreover, the

mere fact that the original indictment may have included something that the Government could

not prove (illegal conduct on May 5) does not mean that Ratcliff perjured himself; "[r]ather than

a sign of knowingly false testimony, the discrepancy may have been due to an unintentional

drafting error." *Madrid*, 610 F. App'x at 374.  As explained above, Ratcliff's errors appear to be

just that. In short, *Madrid* appears to be directly on point, and, under *Madrid*, the Defendant has

not shown a particularized need for the grand jury testimony.

29

**2. The Need for Disclosure is Not Greater than the Need for Continued Secrecy**

The second *Douglas Oil* factor is whether "the need for disclosure is greater than the need for continued secrecy." *Miramontez*, 995 F.2d at 59. The Court finds that the Defendant also fails to satisfy this.

The Defendant correctly identifies some of the reasons for secrecy in grand juries as laid out in *Douglas Oil*:

> We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. See, *e. g., United States v. Procter & Gamble Co., supra.* In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil*, 441 U.S. at 218–19, 99 S. Ct. at 1672–73.  Defendant is correct that many of these factors do not weigh in favor of preserving the secrecy under the facts of this case.

But Defendant ignores another pertinent part of *Douglas Oil*: this Court must consider the effect disclosure has on future grand juries.  As the Supreme Court explained:

> For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties

*Douglas Oil*, 441 U.S. at 222, 99 S. Ct. at 1674.

Considering this, the Court finds that the need for disclosure is not greater than the need for continued secrecy.  Given the Court's finding about the first prong of the *Douglas Oil* analysis, there is a very minimal need for disclosure in this case.  This nominal need does not outweigh the harm disclosure might have on future grand jury proceedings.  As a result, Defendant has failed to satisfy this *Douglas Oil* requirement.

### 3. The Request is Not Properly Structured

The final *Douglas Oil* requirement is whether the "request is structured to cover only material so needed." Requests for grand jury transcripts must also be specific. For example, in *United Kingdom*, the Eleventh Circuit found that "[t]he district court did not abuse its broad discretion in declining to grant Appellants'' request for secret grand jury material" in part because of the following:

> Appellants' blanket request for *all* of the unused grand jury materials from the *Ojomo* prosecution cannot be described as the kind of particularized request required for the production of otherwise secret information. Moreover, the breadth of Appellants' request, while understandable to some extent given their lack of access to the materials, makes it virtually impossible for them to demonstrate that each of hundreds of sought-after grand jury items is likely to be exculpatory in the ways they suggest, especially given the representation by the Government's attorney on the record that these items do not mention, let alone exculpate, the Appellants.

*Id.*, 238 F.3d at 1321.  Similarly, in *Miramontez*, the Fifth Circuit found that a *pro se* defendant did not show a " 'particularized need' under any of the *Douglas Oil* elements in part " when "[h]is petition [was] wholly general and [did] not request any specific portion of the proceedings for disclosure." *Miramontez*, 995 F.2d at 59.

Defendant has asked for a "transcription of the grand jury proceedings in this case." (Doc. 40 at 1.)  Without a doubt, this request is too broad.  At best, he has made a showing for Ratcliff's testimony, and *maybe* some other government witnesses.  The Court finds that no such

31

showing has been made.  But, even if it had been, the Defendant's request is too broad and should fail.

### 4. In Closing

The Court recognizes the "chicken and the egg problem" identified by Defense counsel at oral argument.  Noted commentators explain the inherent problem that a defendant usually encounters in seeking grand jury material under Rule 6(e)(E)(ii):

> Of course, such a showing is usually difficult to make unless the defendant already knows what took place before the grand jury, making it predictable that most requests based on this ground are denied, although there are rare exceptions. In any event, given how unlikely it is that an indictment will be dismissed because of what occurred before the grand jury even if the information were known, the circular nature of the problem is not often of great practical importance.

Wright & Leipold, *Federal Practice and Procedure* § 108.  Later, the treatise reiterates this:

> It should hardly be surprising that most of these claims are rejected. As noted in prior sections, grand jury secrecy creates a circular problem for defendants—they can't obtain grand jury material without showing the potential grounds for dismissal, and they usually can't show potential grounds for dismissal without the grand jury material. Since defendants seeking dismissal bear a "heavy burden" even to get a hearing on the alleged improper conduct, and since courts extend a presumption of regularity to the grand jury proceedings, the lack of access to the relevant information will often be fatal.

1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 113 (4th ed. 2016).

Nevertheless, the Defendant has the burden of proof on this issue, and he has not come close to sustaining that burden.  Disclosure is not needed to prevent an injustice, as (1) the Defendant has not sufficiently proven that Ratcliff lied to the Grand Jury, and (2) even if he had lied to obtain the original Indictment (alleging a crime in May 2015), the Superseding Indictment (alleging misconduct in March 2015) has mooted any possible taint.  Further, even if the

Defendant had made such a showing, the need for disclosure is not greater than the need for continued secrecy, and Defendant's request is in no way structured to cover only the material needed.

The Court has "weigh[ed] carefully the competing interests in light of the relevant circumstances and the [Supreme Court's] standards." *Douglas Oil*, 441 U.S. at 223, 99 S. Ct. at 1675. Having done so, the Court concludes that Defendant has failed to prove that "the need for [disclosure] outweighs the public interest in secrecy." *Id.* As a result, the Defendant's motion is denied.

IV.     **Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion to Suppress* (Docs. 27 & 39) and *Defendant's Motion for a Pre-Trial Copy of the Transcript of the Grand Jury Proceeding* (Docs. 29 & 40) filed by Defendant Christopher G. Waguespack are hereby **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 20, 2017</u>.


_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

33